**FILED**
**Dec 30, 2019**
**08:45 AM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| JOE SHELDON, | ) | **Docket No. 2019-07-0408** |
| Claimant, | ) | |
| | ) | |
| | ) | **State File No. 6965-2018** |
| v. | ) | |
| JASON USERY CONSTRUCTION, | ) | |
| Respondent. | ) | **Judge Amber E. Luttrell** |

---

## EXPEDITED HEARING ORDER

---

The Court held an Expedited Hearing on December 6, 2019, on Mr. Sheldon's request for medical and temporary disability benefits. The central legal issue is whether an employee-employer relationship existed between Mr. Sheldon and Jason Usery Construction at the time of the injury. For the reasons below, the Court holds Mr. Sheldon did not establish he is likely to succeed in proving he was Usery's employee. Thus, his request is denied.[1]

### Claim History

Mr. Sheldon testified his work history consisted of truck driving and some carpentry. The day before his injury, Mr. Sheldon began work on a residential construction job installing roof decking. On the second day of work, July 25, 2017, Mr. Sheldon fell from the roof to the ground.

Jason Usery drove Mr. Sheldon to a nearby hospital, which later transferred him to Vanderbilt University Medical Center. Vanderbilt providers treated Mr. Sheldon conservatively for lumbar and sacral fractures, and Dr. Douglas Weikert, an orthopedist, performed surgery for bilateral wrist fractures. Mr. Sheldon underwent extensive treatment for his right wrist due to two failed fusion surgeries. Mr. Sheldon later underwent a third and final surgery in 2019. As a result of the injury, Mr. Sheldon

---

[1] Jason Usery Construction also argued that Mr. Sheldon's claim is time-barred, but based on the holding, the Court need not address this defense at this time.

testified he cannot use his right hand like he used to and can no longer drive a truck.

Concerning the employment relationship, Mr. Sheldon alleged he was Jason Usery Construction's employee on his injury date. He worked one full day and a few hours on the second day. He testified that Ricky Usery, Jason's father, drove him to the jobsite the first day. Jason drove him to the jobsite the second day, provided some tools, and paid him approximately $250 per week *after* the injury "to help him get on his feet" until November 2017.[2]

On cross-examination, Mr. Sheldon testified he knew the Userys for years as family friends and neighbors. He conceded Jason never called him or asked him to work on the job, nor did he discuss wages or a time to report to work. They never discussed any rules of the job. He testified that he brought his own hammer and tape measure to the jobsite and used other tools from what he believed was Jason's trailer.

Jason Usery testified he worked as a general contractor in the past under his company, Jason Usery Construction, but he retired his general contracting license in 2015. He then started a new business, Jase Enterprises, working as a construction/project manager. He has no employees and is personally registered on the State of Tennessee Exemption Registry. He explained he works as a liaison between homeowners and workers on home design and budgeting.

Jason further testified that the home where Mr. Sheldon's injury occurred belonged to the Beecham family. The Beechams served as their own general contractor and hired workers to perform the job. Initially, he discussed working for the Beechams as a project manager under Jase Enterprises LLC in 2017; however, they could not agree on compensation, so Jason stated he worked as just "another worker on the job" to be paid by the Beechams "per job." He did not determine any other worker's pay and received no cut of the other workers' pay. Mrs. Beecham paid him in cash. The Beechams provided the supplies, and most workers used some of their own tools.

Although he was not the project manager, Jason knew the workers on the job except for one. None worked for him, Jason Usery Construction, or Jase Enterprises. Jason testified he did not ask Mr. Sheldon to work on the Beecham job or know he would be working there. His father told him that Mr. Sheldon called him and stated he needed to work, so he brought him to the jobsite the first day. Jason drove Mr. Sheldon to the jobsite the second day because his father was unavailable.

Concerning the accident, Jason testified he saw Mr. Sheldon fall and took him to the hospital. Two weeks after the accident, Mr. Sheldon asked him to "help him out"

---

[2] Mr. Sheldon could not recall the exact amount Usery paid him and gave inconsistent figures during his testimony.

financially, and Jason said he would try. He testified he has known Mr. Sheldon for fifteen to twenty years and wanted to help him but did not feel legally obligated to do so. He stopped helping Mr. Sheldon in November 2017.

Jason's wife, Suzanne Usery, testified that she was not involved in Jason Usery Construction. She knows Mr. Sheldon from their neighborhood and knew that he used to work for Jason over nine years ago. She stated that he was not Jason's employee in 2017. Ms. Usery testified consistently with her husband regarding the money they gave Mr. Sheldon following his injury to help his family. She testified they were friends and needed help.

Ricky Usery testified he is a retired residential construction worker. He never had any ownership interest in Jason's businesses. He testified he was Mr. Sheldon's neighbor and friend for twenty years and loaned him money, trailers, and materials "numerous times" before the injury.

Ricky also worked on the Beecham house and asked Mr. Sheldon if he wanted to work on the project. At the time, Mr. Sheldon was living in a rental home he was repairing, and Ricky supplied him with materials to work on the rental. Ricky stated Mr. Sheldon worked on the Beecham project to pay him back for the materials and just to "get out of his house." He testified that he and Mr. Sheldon never discussed wages. Regarding tools and supplies, Ricky testified that some of the tools on the jobsite were his, some were Jason's, and other workers brought their own. The Beechams provided the supplies.

Mr. Sheldon filed a Petition for Benefit Determination, and the Bureau initiated an investigation of Jason Usery d/b/a Jason Usery Construction, Jason Usery Construction, and Jase Enterprises. A compliance specialist completed an Expedited Request for Investigation Report. The report indicated he only interviewed Mr. Sheldon.

According to the report, Mr. Sheldon told the specialist he was hired to work for Jason Usery on the job for $100 per day or $500 per week, which he "expected would probably be paid in cash." He stated Jason directed his work, provided the large tools, and picked him up for work. He believed Jason had the right to terminate him and stated they did not discuss him working for other entities. Lastly, Mr. Sheldon indicated Jason paid him $300 per week after the injury.

### Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Sheldon must present sufficient evidence that he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Motion to Dismiss*

At the conclusion of Mr. Sheldon's proof, Jason Usery Construction moved for involuntary dismissal on statute-of-limitations grounds under Tennessee Rule of Civil Procedure 41.02(2), which provides:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

Tennessee Courts have held that, "[W]hen faced with a Tenn. R. Civ. P. 41.02(2) motion, the [trial] court weighs the evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence." *Thompson v Adcox*, 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001).

At this interlocutory stage, Mr. Sheldon need not prove all elements of his case by a preponderance of the evidence. Instead, he must come forward with sufficient evidence to show that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2019). Thus, a motion to dismiss is not appropriate at an Expedited Hearing, an interlocutory proceeding.

*Application of Law to Facts*

To determine whether Mr. Sheldon is entitled to the requested relief, this Court must first address whether an employee-employer relationship existed between him and Jason Usery. The Workers' Compensation Law requires consideration of the following factors to determine whether an individual is an employee:

(i)     The right to control the conduct of the work;
(ii)    The right of termination;
(iii)   The method of payment;
(iv)    The freedom to select and hire helpers;
(v)     The furnishing of tools and equipment;
(vi)    Self-scheduling of working hours; and
(vii)   The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(13)(D)(i). No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Smiley v. Four Seasons Coach Leasing, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 28, at *10-11 (July 15, 2016).

Applying these principles to the facts of this case, the Court cannot find Mr. Sheldon presented sufficient evidence to prove he is likely to succeed in establishing he was Jason Usery/Jason Usery Construction's employee on his injury date.

The Court first finds the proof does not establish Jason Usery Construction was still in business on Mr. Sheldon's injury date. Jason surrendered his general contracting license in 2015 and no longer worked under Jason Usery Construction. In 2017, Jason operated Jase Enterprises, but on Mr. Sheldon's injury date he worked as a laborer for the Beechams.

With regard to the right to conduct the work, Mr. Sheldon offered no testimony to prove or even suggest that Jason controlled the conduct of the work. The uncontroverted proof indicated Jason did not ask him to work on the Beecham project and did not know he was going to work on the project until his father told him. It was undisputed that Jason was not present at the jobsite when Mr. Sheldon arrived the first day and only gave him a ride to the jobsite the second day because of his father's unavailability. This factor fails to support an employer-employee relationship.

Concerning payment, Mr. Sheldon told the compliance specialist that Jason agreed to pay him $100 per day or $500 per week for his work; however, he testified at the hearing that he never discussed payment with Jason or anyone. Regarding the money Jason paid him after the injury, the uncontroverted testimony was that Mr. Sheldon asked Jason to "help him out" following his accident, and Jason did so because he considered him a friend. This was consistent with Ms. Usery's testimony that they helped Mr. Sheldon financially by loaning him money before and after the accident. This factor fails to support an employer-employee relationship.

With respect to tools and equipment, the proof indicated that the workers provided some of their own tools and used some of Jason's or Ricky's tools. The Beechams furnished the supplies. This factor fails to support an employer-employee relationship.

Regarding the scheduling of work hours, neither party introduced proof on this factor. Mr. Sheldon testified the Userys set the time because Ricky and Jason told him what time they would pick him up. This factor fails to support an employer-employee relationship.

As for the remaining factors, the Court finds little to no proof presented at the

5

hearing regarding these factors to support an employer-employee relationship.

Therefore, the Court holds Mr. Sheldon failed to present sufficient evidence of an employee/employer relationship with Jason Usery Construction at this interlocutory stage to prove he is likely to prevail at a hearing on the merits. Accordingly, Mr. Sheldon's claim against Jason Usery Construction for the requested medical and temporary disability benefits is denied at this time.

**ENTERED December 30, 2019.**

_____
**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:[3]
1. Affidavit of Joe Sheldon
2. Expedited Request for Investigation Report
3. Henderson County Community Hospital records
4. Vanderbilt University Medical Center records
5. Deposition of Joe Sheldon- (Penalty case)
6. X-rays[4]

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[3] Jason Usery Construction introduced a Bureau of Workers' Compensation Contested Case Hearing "Order Modifying Penalty Assessment" into evidence to show this Court the Administrative Law Judge's findings in the penalty case. Upon consideration, the Court declines to admit the document into evidence.

[4] Mr. Sheldon introduced black and white x-ray photos of his injuries into evidence. Jason Usery Construction objected to admissibility under Tennessee Compilation Rules and Regulations 0800-02-21-.16(b) because the x-rays were not signed by a physician. The Court took the objection under advisement, and upon review overrules the objection. The Court finds the photos provided Mr. Sheldon's name, date of birth, and date of service. The photos also indicated that Dr. Weikert ordered them. The Court finds there is nowhere for a physician to sign an x-ray photo, and the information provided is sufficient for the Court to determine its admissibility at this stage as a self-authenticating document.

4. Motion to Dismiss Request for Expedited Hearing and Motion to Continue Expedited Hearing
5. Motion to Add Defense of Statute of Limitations
6. Usery's Position Statement for Expedited Hearing
7. Usery's Witness and Exhibit List
8. Usery's Motion in Limine to Exclude Medical Records from Expedited Hearing
9. Order Denying Employer's Motion to Dismiss and Motion to Continue Expedited Hearing
10. Order Granting Motion to Add Defense of Statute of Limitations
11. Order on Employer's Motion in Limine to Exclude Medical Records from Expedited Hearing
12. Motion to Add Defense of Intoxication or Illegal Drug Use-filed December

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on December 30, 2019.

| Name | USPS | Email | Service sent to: |
|---|---|---|---|
| Joe Sheldon, Employee | X | X | c.m.sheldon89@gmail.com<br>2849 Pollock Rd., Huron, TN  38345 |
| Hailey David, Employer's Attorney | | X | davidh@waldrophall.com<br>smithj@waldrophall.com |
| LaShawn Pender, Program Coordinator | | X | lashawn.pender@tn.gov |
| Compliance Unit | | X | amanda.terry@tn.gov |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals
Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

- ☐ Temporary disability benefits
- ☐ Medical benefits for current injury
- ☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                              RDA 11082

9. My expenses are:

Rent/House Payment $_____ per month    Medical/Dental   $_____ per month

Groceries    $_____ per month     Telephone    $_____ per month

Electricity    $_____ per month     School Supplies $_____ per month

Water    $_____ per month     Clothing    $_____ per month

Gas    $_____ per month     Child Care    $_____ per month

Transportation   $_____ per month     Child Support   $_____ per month

Car    $_____ per month

Other    $_____ per month (describe: _____)

10. Assets:

Automobile    $_____     (FMV) _____

Checking/Savings Acct. $_____

House    $_____     (FMV) _____

Other    $_____     Describe: _____

11. My debts are:

Amount Owed         To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                    RDA 11082